IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**JACKIE LYNN STEELE**                                                   **PLAINTIFF**

**VS.**                    **CASE NO. 4:18CV00176 KGB-PSH**

**NANCY A. BERRYHILL, Acting Commissioner,**
    **Social Security Administration**                            **DEFENDANT**

**FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

Plaintiff Jackie Lynn Steele ("Steele"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Disability Insurance benefits (DIB), contends the Administrative Law Judge ("ALJ") erred: (1) by failing to properly develop the evidence; (2) by failing to consider evidence which fairly detracted from his findings; (3) in assessing her credibility; (4) in discrediting the opinion of treating physician Dr. Andrew Monfee ("Monfee"); (5) in determining Steele's residual functional capacity ("RFC");

1

and (6) in assessing the RFC of Steele's past relevant work. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on November 17, 2016. (Tr. 44-70). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from September 8, 2015, Steele's alleged onset date, through March 16, 2017, the date of the ALJ's decision.

*The Administrative Hearing:*

Steele, who was 46 years old at the time of the administrative hearing, has a high school education, an associate's degree in business, and has taken additional online classes. She lived with her husband and nineteen year old son. Steele testified to past relevant work as an employee of Dow Chemical, working there from 2001 until September 2015. Steele described a history of back problems necessitating five surgeries, the fifth of which occurred in September 2015 and involved the removal of hardware placed in her back during the prior surgeries. Steele stated that Monfee had treated her since 2001,[1] and had prescribed medications for anxiety and pain. She also described taking over-the-counter medications such as Aleve and Excedrin Migraine. According to Steele, she takes the pain medication hydrocodone only when needed, which at that time was approximately three times a week. Steele had taken no pain medication, either prescription or over-the-counter, on the day of the hearing. Her prescription medication for high blood pressure was effective, according to Steele, who noted no side effects from the various medications except for unspecified side effects from hydrocodone.

---

[1] The record before the Court contains entries from March 2015 to April 2017, consisting of six examinations by Monfee. Monfee is a family practitioner, while Dr. Edward Saer ("Saer") was her treating orthopedic physician.

2

Steele summarized her daily activities and abilities as follows: her back pain prevented her from getting a good night's sleep, and she was getting six hours of sleep nightly; she always experienced some pain, and was stiff for about an hour after waking; her typical day included caring for her dog; she could tend to personal care, such as makeup and clothing, though she adjusted in some areas, such as wearing slip-on shoes; her daily pain was rated at around seven on a scale of 1-10; she could do dishes and laundry and cook light meals; she could stand, walk, sit, and ride in a vehicle for 15 minutes before pain and anxiety increased; she could lift no more than 10 pounds; she could go grocery shopping with her husband; she could drive; she had increased stress and lowered concentration due to pain; and she could do light activities, such as watering plants or taking the dog out, outside the house. Steele indicated she got relief from her back problems by lying flat, which she did twice daily for about an hour. (Tr. 45-65).

Barbara Hubbard ("Hubbard"), a vocational expert, stated that Steele's past work was as an industrial hygiene engineer and secretary. The ALJ posed a hypothetical question to Hubbard, asking her to assume a worker of Steele's age, education, and experience, who could perform light work where the worker could occasionally climb ramps, stairs, never climb ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, crouch, or crawl, and that the worker must avoid concentrated exposure to hazards including no driving as part of work. According to Hubbard, such a hypothetical worker could perform Steele's past relevant jobs. (Tr. 65-66).

*ALJ's Decision:*

In his March 16, 2017 decision, the ALJ determined that Steele had the following severe impairments: degenerative disc disease and dextroscoliosis and levoscoliosis of the thoracolumbar spine status-post multiple surgeries. The ALJ further determined that Steele had the RFC to perform

3

light work with the restrictions which mirrored those posed to Hubbard in the hypothetical question cited above. The ALJ, citing the appropriate factors,[2] assessed Steele's subjective allegations, finding her "allegations of severe and disabling pain and discomfort are not supported by the other evidence of record." (Tr. 10). The ALJ thoroughly discussed the medical evidence, with particular emphasis on the findings of treating physicians Saer and Monfee.[3] The ALJ acknowledged Monfee's opinion that Steele was totally disabled and listed reasons why he assigned little weight to this opinion (e.g., Monfee's opinion was at odds with his own treatment records and at odds with other medical evidence in the record). The ALJ assigned significant weight to the opinions of the non-examining state agency physicians. Relying upon Hubbard's testimony that Steele could perform her past relevant work, the ALJ concluded Steele was not disabled. (Tr. 4-12).

*Medical Evidence During the Relevant Period:*[4]

In the months preceding the relevant period Steele was seen by Monfee on March 31, 2015 for elevated sedimentation rate, joint pain, and acne. She was given Viibryd samples. (Tr. 350). Pursuant to Monfee's request, Steele was seen at Arkansas Specialty Orthopaedics in April of 2015. Saer and APRN Nicholas Fazio agreed that the x-rays were not helpful in

---

[2] The ALJ cited the relevant regulations which embody the *Polaski* factors, as well as citing the relevant factors at length. (Tr. 10).

[3] It was appropriate that the ALJ did not discuss the treating physician Angela R. Styles ("Styles"), since her treatment for rosacea and other skin issues were not alleged to be disabling.

[4] Prior to the relevant period, Steele received extensive treatment and underwent multiple surgeries for scoliosis between July 1982 and March 1987 at Little Rock Orthopedic Clinic. (Tr. 351–56). She returned for treatment of a cervical strain in October 1991 and had further surgeries and treatment relating to her prior spinal fusion and scoliosis between August 1994 and May 1999. (Tr. 357–58). Dr. Charles Schock was the treating orthopedic surgeon.

determining the source of Steele's pain. The examination reflected that Steele's upper extremities moved equally well and strong, her hips showed "slight positive Patrick's test for anterior lateral left hip pain, otherwise negative," negative straight leg raises bilaterally and no focal weakness or numbness with lower extremities, and stable gait. The plan was to further explore the source of the pain with a bone scan and lumbar CT. (Tr. Tr. 402-404).

Still slightly before the onset of the relevant period, in June 2015, Steele saw Saer and had a nuclear medicine whole body bone scan with SPECT CT of the thoracolumbar spine. (Tr. 341). The impression was of dextroscoliosis in the thoracic spine and levoscoliosis in the lumbar spine; increased uptake of radiotracer at the L3–L4 level, consistent with degenerative disk disease; mild increased uptake in the thoracic spine extending from T5 through T7 from degenerative changes; and increased uptake of radiotracer within the right sternoclavicular joint from degenerative change. (Tr. 341). Saer reviewed the results and could find nothing to explain Steele's pain. (Tr. 401).

Saer followed up with Steele in August 2015 after an iliac screw injection, and Steele reported her pain was significantly worse for a few days. Removal of hardware was discussed, and Saer noted that the hardware could possibly be the cause of her pain. (Tr. 398).

One day after the alleged onset date, on September 9, 2015, Steele presented to Saer with increasing pain in the sacroiliac area that was potentially caused by iliac screws from a prior surgery. (Tr. 313). Surgery was performed to remove the distal rods and bilateral iliac screws. (Tr. 317). Steele was discharged on September 10, 2015 and prescribed hydrocodone. (Tr. 313, 315).

During follow-up on September 29, 2015, Steele reported no new symptoms, but it was still too soon after surgery to tell if the surgery had been successful. (Tr. 396). X-rays on that date showed the removal of hardware, and that the "overall alignment is stable." (Tr. 395). Another x-ray on November 10, 2015 showed hardware removal, and Saer noted that the sacroiliac joints "actually look okay." (Tr. 394).

Monfee saw Steele on December 15, 2015 where she presented with shortness of breath, arthralgia, back pain, and anxiety. Monfee assessed scoliosis and chronic back pain, noted "total disability," and also noted she "needs evaluation for long-term disability." (Tr. 349). Monfee's treatment notes indicated Steele was unable to flex at lumbar spine to ninety degrees, but also indicated normal range of musculoskeletal motion. In a letter dated that same day, Monfee indicated Steele has less than 90 degrees flexion at the waist, can sit still for no more than 15 minutes, can stand for no more than 15 minutes, has radiating pain into the left hip, cannot walk more than a quarter mile due to pain, and that—if she does walk a quarter mile—she would be unable to function the next day. Monfee opined that Steele was unable to perform any type of gainful employment as a result of permanent deficits from congenital scoliosis. (Tr. 348).

Saer saw Steele on December 17, 2015 for continued back pain. Saer wrote, "I don't have a good explanation for her continued pain. I think it's probably referred." (Tr. 392). A CT scan of the lumbar spine was performed at Saer's request on December 29, 2015. The impression was "solid bone union of the lateral masses . . . No evidence for hardware loosening." (Tr. 387).

Monfee saw Steele on March 23, 2016 for back pain, rosacea, and anxiety. (Tr. 457). Steele had lab work done on April 26, 2016 by Monfee. (Tr. 473–474). Steele visited Monfee on

6

October 5, 2016 for back pain and rosacea. (Tr. 475).

The Court now considers Steele's arguments for relief.

**Failure to properly develop the evidence:**

Steele first argues there was insufficient evidence in the record to support the RFC determination of the ALJ. Specifically, she faults the ALJ for failing to ask Monfee and Saer for additional information to assist in reaching the RFC conclusion. The Court disagrees. Even though Steele is correct that the ALJ has a duty to fully and fairly develop the record, she fails to demonstrate how the record, which appears to contain all treatment records during the relevant period, was inadequate and how additional reports would cure the inadequacy. The objective medical evidence in this case was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient). Monfee, the general practitioner, offered his opinions, and Saer, the orthopedic surgeon, provided detailed notes of his treatment, including his thoughts on the source of Steele's symptoms. Under these circumstances, we find no error in the ALJ's reliance upon the record before him.

**Failure to consider evidence which fairly detracted from his findings:**

Steele next contends the ALJ failed to consider evidence which was at odds with his RFC assessment. Specifically, Steele faults the ALJ for failing to include more stringent lifting restrictions and fatigue resulting from her poor sleep patterns in his RFC determination. While these arguments are part of the larger claim of error in RFC assessment, raised as Steele's fifth claim and addressed in detail later in this Recommendation, suffice it to say that the ALJ was not obliged to accept at face value any particular medical treatment note nor any particular

7

subjective statement of Steele. The ALJ indicated he carefully considered "the entire record," and the ALJ performed a thorough credibility assessment. (Tr. 7). The claim that he failed to consider evidence which detracted from his findings is without merit.

**Error in assessing credibility:**

As previously noted, the ALJ cited the relevant factors in assessing Steele's credibility. The ALJ concluded that Steele's statements concerning the intensity, persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence." (Tr. 10). To support his credibility conclusion, the ALJ found Steele's daily activities at odds with her subjective statements, as was her infrequent use of narcotic medication. The ALJ also cited the objective medical evidence to support his conclusion. We find no error in the ALJ's ultimate credibility finding. While the ALJ's description of Steele's daily activities was slightly overstated, this error was not fatal to the overall analysis. The ALJ was correct to cite the use of over-the-counter medication, and the infrequent use of narcotics, as inconsistent with the subjective description of Steele's pain. Of greater significance was the absence of objective medical evidence to support Steele's statements. Saer, the orthopedic surgeon, could not determine the source of the pain despite imaging results. Monfee, the family practitioner who opined Steele was totally disabled, described in his treatment note of December 15, 2015, normal range of motion in his musculoskeletal examination. Steele argues that Monfee's treatment of her for the prior fifteen years should bolster his opinion. However, Monfee's treatment notes in the record before the Court begin in March 2015. In summary, the credibility assessment of the ALJ is supported by substantial evidence. An ALJ is not required to mechanically address each *Polaski* factor. *See, e.g., Strongson v. Barnhart*, 361 F.2d 1066 (8th Cir. 2004). It is not

appropriate for this Court to perform a *de novo* review of the factors. Rather, our inquiry is whether substantial evidence supports the ALJ's findings. We find that it does.

**Error in discrediting Monfee's opinion:**

Monfee opined in December 2015 that Steele was totally disabled,[5] noting scoliosis and chronic back pain. Prior to offering this opinion, the record shows Monfee last examined Steele in March 2015, assessing her with "elevated sed rate, joint pain, acne." (Tr. 350). A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. *See Choate v. Barnhart*, 457 F.3d 865 (8th Cir. 2006). Here, the record provides numerous reasons supporting the discounting of Monfee's opinion. First, Monfee is a general practitioner, opining on back pain and issues about which Saer would have greater expertise. Monfee's own examination notes are at odds with his opinion. In March 2015 Monfee found Steele's musculoskeletal examination to be within normal limits, and found she was negative for back, neck, and shoulder pain. (Tr. 350). In December 15, although he then found hip and back pain, he also found Steele to have normal musculoskeletal range of motion. An ALJ may discount a treating physician's opinion when it varies from the findings in the physician's treatment notes. *Gates v. Commissioner, Social Security Administration*, 721 Fed.Appx. 575 (May 14, 2018). Further, the other medical evidence of record is at odds with Monfee's opinion. While a treating physician's opinion should not ordinarily be disregarded and

---

[5] The specifics of Monfee's opinion were that Steele could not sit or stand for more than 15 minutes without "getting up to move about." (Tr. 348). Monfee opined Steele was unable to walk more than a quarter of a mile due to pain. He further found that Monfee also had greatly decreased mobility, with flexion of less than 90 degrees at the waist.

is entitled to substantial weight, such an opinion may be discounted or even disregarded where other medical assessments are supported by better or more thorough medical evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017). Here, Saer found no reason for the pain, and specific findings included negative straight leg raises and normal range of musculoskeletal motion and normal strength. (Tr. 324, 421). The ALJ properly considered the statement submitted by Monfee, and discounted it for appropriate reasons.[6] There is no merit to this argument.

**Error in determining Steele's RFC:**

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Medical records from treating physicians can provide affirmative medical evidence supporting an RFC determination. *Johnson v. Astrue*, 628 F.3d 991 (8th Cir. 2011). Here, the records of Saer and Monfee, the treating physicians, were ample and provided a sound basis for the ALJ to determine Steele's RFC. The ALJ could and did rely, in large part, upon the records of these doctors. The ALJ did not rely upon the opinion of Monfee, which, as noted, was in conflict with the treatment notes. The ALJ considered Steele's own description of her limitations, and discounted this testimony for valid reasons. The ALJ could make the assessment that he did, and substantial evidence supports his findings.

---

[6] Steele's daily activities were overstated by the ALJ. However, the ALJ was correct to note that Steele took narcotic pain medication infrequently, and took neither narcotic or over-the-counter medication on some days, including the day of the hearing. The hearing, which last 38 minutes, contains no evidence that Steele was unable to sit during the proceeding.

**Error in assessing the RFC of Steele's past relevant work:**

Steele's final argument is that the ALJ neglected to discuss the stress level of Steele's past relevant work. This was error, according to Steele, citing *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003), in support. In that case, the ALJ assigned little weight to the treating psychiatrist's opinion that the claimant, who had serious difficulties with alcohol, had poor or little ability to deal with stress. As a result of this finding, the ALJ omitted the treating psychiatrist's findings from the hypothetical question posed to the vocational expert. The *Brueggemann* case does not govern our analysis, primarily because there was no credible finding by any physician that Steele was limited in her ability to handle the stress accompanying her past relevant work. To the contrary, Hubbard testified to Steele's ability to perform the past work, and the ALJ properly relied upon Hubbard's testimony to find her able to perform "the occupations of secretary and industrial hygiene engineer both as she actually performed those occupations and as those occupations are generally performed." (Tr. 11).

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

Based upon the foregoing, we recommend that the final decision of Berryhill be affirmed and Steele's complaint be dismissed with prejudice.

IT IS SO ORDERED this 7th day of December, 2018.

_____
UNITED STATES MAGISTRATE JUDGE